The Ohiee Justice delivered the opinion of the [*363 court.
*430 The defendants were the sureties of Joshua Mersereau in a recognizance for his appearance on an indictment for a misdemeanor. In the term of November last,, judgment was rendered by this court in favor of the State against George IT. Stout, for the sum of three thousand dollars, according to the form and effect of the recognizance, and against Smith Freeman, for the like sum, according to the form and effect of-the recognizance; and execution was awarded thereon accordingly, with costs. Upon this judgment, two writs of fieri facias de bonis et terris were issued, one against each of the defendants; and the sheriff was thereby commanded, for want of sufficient goods and chattels, to make the said sums of the lands, tenements and hereditaments whereof the defendants were seized on the twelfth day of December, 1826, the day of the taking of the recognizance in the Court of Oyer and Terminer of the county of Middlesex.
The counsel of the defendants has moved to set aside these writs of execution, on two grounds. 1st. Because two writs have been issued at the same time, instead of one writ several in its nature. 2d. Because the command is to take the lands of which the defendants were seized on the 12th day of December, 1826, instead of the 12th day of November, 1829, the day the judgment on scire facias was rendered.
One writ of execution, after the precedents given in Arch forms, 261, 263, and other books of practice, commanding the sheriff to make the sum of $3,000 of George H. Stout, and the sum of $3,000 of Smith Freeman, would have been more simple, more conformable to the previous proceedings in the case, and would have equally subserved the purposes, and secured the interests, of the prosecution. The recognizance was several, not joint and several. One writ of scire facias had been used, several in its nature; that is to say, requiring each defendant to shew cause why judgment should not be given and execution issued against him for the sum for which he was bound. The judgment has been *431 already stated. One execution might have been used, and would have been as efficacious as a greater number. Where there has been one recognizance, one scire facias, and where one execution will suffice, I am unwilling to sanction more than one at *the same time, unless brought thereto [*364 by the force of precedent or authority. Such precedent or authority I do not find in the books. In 1 Areh.pr. 293, it is said, “ If the proceedings against the bail have been by scire facias against both, the execution may be either joint against both, or several against each; for the purport of' the scire facias is to have execution according to the form and effect of the recognizance, and the recognizance is joint and several.” Now, the author here means one writ and not several writs; which may be either joint against both; that is, commanding the sum for which they are bound to be made of the goods and chattels of both; or several against each; that is, commanding the sums for which they are severally bound to be made of the goods and chattels of each respectively. Such is his language, and such is shewn to be his meaning by the numerous forms he refers to, in Went-worth and Impey; all of which, with a single exception, are against two persons as bail; some commanding the money to be made of them jointly; some severally; and one, 10 Wentw. 340, commanding the sums, for which they were bound, to be made of them severally, and the costs jointly. From the excepted form, there is reason to infer that, if ever actually used, there had been but a single person bound as bail. Arnhbold also cites 2 Saund. 72 b, where Serg’t Williams, in his note, says, “The recognizance upon which the scire facias is founded, being joint and several, and the purport of it being to have execution according to the form and effect of the recognizance; it therefore follows, that although the scire facias be joint, the execution may be several.” The learned annotator does not here speak of several writs at the same time. He may mean one writ, several in its nature and command, against *432 all the bail, or a single writ against one of the bail, for the whole amount mentioned in the recognizance, and which the-plaintiff is entitled to recover; and -which writ he may, therefore, take where the bail are bound jointly, as well as-severally, for the whole; because the judgment is, that the plaintiff have execution according to the recognizance. The only case cited by Sergeant Williams, in support of Imposition, is Gee vs. Fane, reported in 1 Lev. 225, and 1 Sid. 339. The recognizance of bail was joint and several; and judgment "on scire facias was that the plaintiff should have execution according to the recogni*365] zance. A ca. sa. was sued out against *Eane, one of the bail only; which the court refused to set aside, because the recognizance being several as well as joint, the execution may also be several. Neither the doctrine of the annotator, nor the case he has cited, sustains-the propriety of issuing several writs at the same time. In another passage, Archbold says, “ Upon a scire facias against bail, you may have one writ of execution against both, or separate-writs against each, for the recognizance is joint and several.” 2 Jirch. pr. 91. He cites 1 Rolle Abr. 888, which, however, does not support his position; nor is either sustained by the case which Eolle professes to have abridged; that of Dixon v. Adams, in Tr. 39 Eliz. in B. R. The case at large is to be found in Cro. Fliz. 538, and there is not the slightest intimation that more than one person was-bail. “ Dixon became bail. Adams recovered ; and upon a scire facias against Dixon the bail, had judgment against him ; and he, without other process, paid the condemnation.” The case is also reported in Moore 710; and is also abridged in 1 Rolle 28, Tit. action on the case, pi. 55, to the same effect as in Crolce. Baron Corny ns says, Tit. execution, H. 242, “ Though he has execution against one of the bail, if he be not satisfied, he may have execution-against the other.” And again, Tit. Bail, R. 11, p. 65, “Iffhe has one of the bail in execution, he may afterwards sue execution against *433 the other.” But these passages, however, they may sanction several writs, at different times, do not authorize them at the same time.
Inasmuch then, as I do not find any direct authority in support of the two writs issued in the present case; and as one conformable to the judgment would have sufficed, I am of opinion, they were improvidently issued, and should be set aside.
The second ground of objection is, that the writs command the taking of the lands, of which the defendants were seized, when the recognizance was acknowledged, instead of when judgment on scire facias was rendered; until which time, it is insisted, the lands were not bound.
This objection is not well taken. The lands of which the recognizors were seized when the recognizance was entered into, as against them and their heirs, are thereby hound; and if so, the command of the writs is in this respect correct. The terms of the recognizance lead very clearly to this conclusion. The *recognizance is the acknowledgment [*366 of a debt upon record; to be made, not immediately nor absolutely, but conditionally; to be made, if tbe stipulation of the condition be not fulfilled; to be made, of the goods and chattels, lands, tenements, and hereditaments of the recognizors. "What lands ? The answer is obvious. The lands of which they were then seized; not of which they might peradventure be seized at some futuro and uncertain clay. In Baskerville v. Brock, Poph. 132, a man became bail for another upon a, latitat in King’s Bench, and before judgment the bail left his lands fora valuable consideration, and afterwards judgment was given for the plaintiff. And it was debated whether the land leased should bo liable to the bailment. The case occurred before the statute of frauds. On the part of the lessee, it was insisted, that the land was not bound until judgment given. But it was held by two of the judges, the third being of a contrary opinion, that the lessee should bo bound; and that upon the judgment, *434 relation w'as made from the time of the bailment. In Cro. Jac. 449, the same case is partially reported ; the arguments of the counsel are given, but not the opinions of the judges. The secondary Broom is, however, stated to have said that the precedents upon the entry of a judgment against the bail, are “ de tempore reeognitionis secundum forman reeognitionis.” In Hall v. Winckfield, Hob. 192, a recognizance acknowledged before the Chief Justice of the Common Pleas, in vacation, and entered upon the roll at the ensuing term, was ruled to bind froin the acknowledgment. The court held that when entered, it is a recognizance from the first acknowledgment, and binds persons and lands as a record from that time. Eor it is the acknowledgment before'the judge that gives it the force of a record, though the enrollment be necessary for the testification and perpetuation of it. In Shuttle or Chetley v. Wood, 2 Salk. 564, 600, 659, in an action of debt in the King’s Bench, on a recognizance of bail, in the Common Pleas, taken before a judge at his chambers, it was held that the recognizance in the King’s Bench is not obligatory until entered of record in the court; “ but in C. B. it is a record immediately upon the caption, and binds the lands before it is filed at Westminster and the reason given is, that “ the Court of King’s Bench do enter all recognizances as taken in court, but the Common Pleas enter specially.” In F. N. B. *367] *596, note a, it is said, “ the seire faeias ought to be tenentibus terrarum quce fuerunt the conusee’s the day of the recognizance or afterwards.” Baron Oomyns lays down the following rule: “ If there be execution of the lands of the bail, this relates to lands which he had at the time of the recognizance made, though they are aliened afterwards, and this in B. R. as well as in C. B.” Com. dig. tit. Bail 60, R. 11. Cruise says, “ a recognizance is a lien upon all the lands which the cognizor has at the time he acknowledges it; and also upon all those which he afterwards acquires; so that no alienation by the cognizor will prevent *435 the cognizee from extending the land. But by the statute 29 C. 2 c. 3, it is enacted that no recognizance shall bind lands in the hands of bona fide purchasers but from the time of the enrollment.” Cruise dig. tit. 32, ch. 10. sec. 22, 24. The defendant’s counsel has urged a distinction between a recognizance conditioned for the payment of a sum of money, which it is conceded binds lands immediately, and a recognizance with a condition for appearance, which, as is insisted, does not bind until forfeiture; and he cited Baskerville v. Brook, Cro. Jac. 449. In that case, a distinction is attempted between an absolute recognizance and a recognizance conditional, of which latter bail is said to be; but it is a distinction raised by counsel in argument, was not sanctioned by the court in that case, and has not been, I believe, elsewhere, .and is irreconcilable with the course of authorities to which reference has been just now made.
The counsel of the defendant also referred us to the case of Bridge v. Ford, 4 Mass. Rep. 643, to prove that in case of recognizances to the state, which are matters of record, the condition and forfeiture must appear of record. Now, in the present case, the condition and forfeiture do appear of record; in the first place, in the entry of the recognizance on the records of the court where it was taken; and of the default oil the minutes of the court, where the appearance was to have been effected; and these, according to our practice, aro the only entry of record or enrollment of the recognizances taken in criminal prosecutions, as the filing of the .recognizance is in civil cases; and in the second place, they .appear in the declaration which makes part of the record of the judgment on scire facias, where the recognizance is shewn to have been taken in a court of record, the condition *is set out, and a breach of it alleged; and thus every [*368 matter suggested by Chief Justice Parsons, in the above mentioned case, is here distinctly presented.
The binding power of the recognizance from the time of its acknowledgment, may then, I conclude, be deemed to be *436 fully and firmly settled in the English courts. An examination of its policy would, perhaps, be out of place. It may»however, be readily seen, that were it otherwise, the value- and efficacy of bail, in both civil and criminal cases, would be greatly diminished. It remains to enquire whether the same or a different rule prevails here.
It is said the binding efficacy of the recognizance in England, results from their statutes, and we have here nonesuch. First then, as to the statute 29 C. 2, ch. 3, sec. 28. This enactment does not give, but restrains, the operation of a recognizance. The purpose of it is to protect purchasers bona fide, and for valuable consideration; even in whose hands the lands of recognizors were, before the making of the statute, bound from the time of the acknowledgment. Again, it is said, the liability of the land to be taken in execution is by statute, and not by the common law. It is true.. At the common law, upon a recognizance, a common person should have execution only of the goods and chattels of the defendant, and of the corn and the like present profit which grew upon the land; and by the statute, West. 2, the-land of the debtor was, for the first time, subjected to betaken, not merely on a recognizance, but upon the recovery of a debt or damages in the King’s Court, 3 Co. 11; 3 Bl. com. 418. Now, this statute, it should be observed, merely gave the execution upon the lands of the debtor, and subjected a moiety to be delivered to the creditor by a reasonable extent, until the debt be levied; simply authorized the seizure of the lands which before were out of reach; but what lands ? or when their liability commenced ? are questions not resolved by the statute. They were left to be-regulated by the nature of the recognizance, and the principles of the common law. The statute authorized the-execution, but did not fix the period at which the lien of the recognizance upon the lands commenced. It was-never understood, that the lien commenced, by means of the statute, at the time when the lands should be seized under *437 the execution which the statute had provided. For Lord *Coke in his reading on the statute of West. 2 Inst. [*369 395, says the words “ Et medietatem terra sicce,” which are used in the statute, are to be understood of the one half of such land as the defendant had at the time of the judgment given or the recognizance acknowledged. By our statute, lands are made liable to be levied upon and sold by executions to be issued on judgments obtained in any court of record of the state for the payment of the debt, damages, sum of money and costs recovered ; Rev. Laws, 430, see. 1. And the sixth section, prescribing in what form and manner, execution shall issue against real estate, directs that the whole or the residue, as the case may require, of the money to be raised, shall be commanded to be made of the lands, tenements, hereditaments and real estate, whereof the party was seized on the day, not when the judgment was rendered, but when the said lands, tenements, hereditaments and real estate, became liable to such debt, damages and costs, or sum of money, or at any time afterwards. From this view of the subject, it is seen, that the obligatory force of the recognizance does not exclusively depend on, or result from, the statute which enabled a creditor to reach the land by execution ; and that the structure of our statute is such as to give to the execution an operation upon the lands whensoever they became liable.
It was further insisted by the defendant’s counsel that as under our statute the recognizance is not forfeited until judgment is given on the writ of scire facias, there is, of consequence, no debt due until that time. Rev. Laws 210. But although the debt bo not until then due, or in other words, although the payment of the penalty is not required nor can be enforced until the forfeiture has been legally established, it by no means follows that the lien may not exist from the acknowledgment of the recognance. There is not the slightest incompatibility. The lien of a mortgage subsists from the date, not from the day assigned for *438 payment, although according to Blackstone, until the latter,, the mortgage is not forfeited. And the mortgagee may even stipulate not to take possession until after the day of pay- ' ment, without weakening or suspending his lien.
Upon the whole, I am of opinion, the recognizance created a lien on the lands of the recognizors from the time of its-acknowledgment in the Court of Oyer and Terminer, and *370] that the time *mentioned in the execution is therefore correct. I say nothing as to the effect of a recognizance; against bona fide purchasers, the case before us does not require it.